# IN THE COURT OF APPEALS OF IOWA

No. 4-64 / 13-1266
Filed April 16, 2014

CARGILL MEAT SOLUTIONS CORP. and
THE INSURANCE COMPANY OF
THE STATE OF PENNSYLVANIA,
        Petitioners-Appellants,

vs.

JUAN DELEON,
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Robert J. Blink,
Judge.


        An employer appeals the district court's decision affirming the workers'
compensation commissioner's award of benefits.  **AFFIRMED.**


        Andrew T. Tice of Ahlers & Cooney, P.C., Des Moines, for appellant.

        Harry W. Dahl, Des Moines, and Philip F. Miller, West Des Moines, for
appellee.


        Heard by Danilson, C.J., and Potterfield and McDonald, JJ.

**DANILSON, C.J.**

Cargill Meat Solutions Corporation and The Insurance Company of the State of Pennsylvania (Cargill) appeal the district court's ruling on judicial review, which affirmed the Iowa Workers' Compensation Commissioner's award of benefits to Juan DeLeon. Cargill contends the commissioner's determination that Deleon was permanently injured due to a work accident and the subsequent award of permanent total disability was based on an unreliable expert opinion. Because we find the commissioner's award is the result of a decision process in which the important and relevant matters were considered, and because we find it is supported by substantial evidence in the record when the record is viewed as a whole, we affirm.

## I. Background Facts and Proceedings.

We adopt the district court's recitation of the facts as our own:

Juan was 53 years old at the time of the hearing. He was born in a village in Guatemala and never attended school. He speaks limited English and does not read or write it. He can write his name, but his job application was filled out in Spanish by someone else.

Juan farmed in Guatemala until he was twenty-five. His work history includes stocking produce, bakery work and meat packing.

He began working at the Cargill plant in Ottumwa, Iowa in 2004 after passing a pre-employment physical. That was the highest paying job he had ever had. He earned approximately $9.00/hr.

Juan was working on the line on February 23, 2009, when one of the boxes of pork got stuck. As he tried to free it, his frock coat got caught in the machinery, twisting it and pulling him against the conveyer belt. He flailed around, trying to get free and screamed. Eventually a co-worker stopped the line and got his supervisor to cut him loose.

Juan was bruised and had pain in his abdomen, neck and back. He was taken to the plant nurse. A co-worker filled out the accident report for Juan, and he signed it. Juan was seen by the on-site company doctor, Henri Cuddihy, M.D., at the plant. Dr.

Cuddihy noted that, "He appears to have experienced a significant constrictive type of injury to the abdomen and possibly the abdominal contents." A week later, a lump developed on Juan's abdomen where he had been pulled against the conveyer belt.

In May 2009, Juan was still having pain in his neck and shoulders and also in his abdomen. His family medical provider, P.A. Franke, gave him a restriction of one hour on, one hour off. He presented the restriction to Cargill and was told by Human Resources and his supervisor that they did not have any work for him based on his restrictions. They suggested that [he] seek unemployment. They said they would send him a letter in 18 months, apparently to update his status.

Juan applied for unemployment. Cargill then fought the unemployment, claiming that Juan had a nonwork-related broken arm. This was not true. Juan was awarded unemployment benefits. Contrary to the information given by Cargill Human Resources, he did not receive a status update letter after 18 months.

Despite his initial report that Juan had sustained an abdominal injury, Dr. Cuddihy later said that he had no findings which would link Juan's continuing abdominal condition to his work injury. He placed Juan at MMI for the work injury. Dr. Cuddihy told Juan that Cargill would never admit the work injury. He told Juan that he had a back injury and should try to find a doctor in Iowa City.

Marc Hines, M.D., a neurologist, was retained to evaluate Juan. Dr. Hines performed an examination as a part of his independent medical examination, and issued a report on October 12, 2010. Dr. Hines examined and observed Juan's abdominal condition and auscultated the bowel just under the skin. Dr. Hines concluded that when Juan was pulled and twisted against the conveyer belt he sustained a stretch injury of the mesentery and bowel, catching the bowel into scar formation in the far lower portion of the left lower quadrant. He also concluded that Juan sustained a neck and myofascial injury to the shoulder in the work injury. Finally, Dr. Hines documented that Juan was suffering from depression as a result of chronic pain and difficulty in obtaining treatment despite his obvious abdominal condition. Dr. Hines assigned a 26% permanent impairment rating and placed permanent restrictions of not climbing ladders, avoiding extremes of temperature and vibration, and alternating standing and sitting every 20 minutes. Dr. Hines reported that Juan would be limited to light duty and that his pain would limit his ability to lift. He did not believe Juan could return to factory work.

DeLeon's case came before the deputy commissioner on November 18, 2011. On January 23, 2012, the deputy issued an arbitration decision finding DeLeon permanently and totally disabled as a result of his workplace injury and awarding DeLeon permanent total disability benefits.

Cargill appealed the deputy commissioner's decision. On February 25, 2013, the commissioner issued a decision affirming the deputy's decision and adopting it as the final agency action.

Cargill filed a petition for judicial review of the agency's permanent total disability award on March 18, 2013. The district court issued its ruling on July 19, 2013, finding substantial evidence supported the agency's causation finding and affirming the award of permanent total disability. Cargill appeals.

## II. Standard of Review.

On appeal from judicial review, the standard we apply depends on the type of error allegedly committed. *Jacobson Transp. Co. v. Harris*, 778 N.W.2d 192, 196 (Iowa 2010). Our standard of review depends on the aspect of the agency's decision that forms the basis of the petition for judicial review. Iowa Code § 17A.19(10). Here, Cargill raises two issues:

Cargill's first claim of error is the contention that the commissioner's finding that DeLeon sustained permanent injuries to his abdomen, neck, and back as a result of a work accident is not supported by substantial evidence in the record when viewed as a whole. *See id.* § 17A.19(10)(f). Cargill also contends the finding was a product of a decision-making process in which the commissioner did not consider "relevant and important" matters and was

"unreasonable, arbitrary, capricious, or an abuse of discretion." *See id.* § 17A.19(10)(j), (n).

Similarly, Cargill also contends the commissioner's finding that DeLeon is permanently and totally disabled is not supported by substantial evidence in the record when viewed as a whole and was "unreasonable, arbitrary, capricious, or an abuse of discretion." *Id.* § 17A.19(10)(f), (n).

**III. Discussion.**

**A. Permanent Injuries as a Result of Work Accident.**

Cargill maintains the commissioner's determination DeLeon was permanently injured as a result of the work place accident is not supported by substantial evidence in the record when viewed as a whole, was a product of a decision-making processing in which the commissioner did not consider "relevant and important" matters, and was "unreasonable, arbitrary, capricious, or an abuse of discretion." *Id.* § 17A.19(10)(f), (j), (n). Specifically, Cargill argues that the commissioner was wrong to accept Dr. Hines' opinion of causation because he was not provided with all prior medical treatment records and was the only doctor to opine DeLeon sustained permanent injury from the work place accident. Cargill states this case is similar to *Mike Brooks, Inc. v. House*, No. 13-0303, 2013 WL 4504884 (Iowa Ct. App. Aug. 21, 2013) and relies on our holding that because the experts lacked critical information, substantial evidence did not support their finding of causation. We consider each of Cargill's claims in turn.

"Substantial evidence" is statutorily defined as:

[T]he quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from

the establishment of that fact are understood to be serious and of great importance.

Iowa Code § 17A.19(10)(f)(1). When reviewing a finding of fact for substantial evidence in the record as a whole, we judge the finding "in light of all the relevant evidence in the record cited by any party that detracts from that finding as well as all of the relevant evidence in the record cited by any party that supports it." *Id.* § 17A.19(10)(f)(3). "Our review of the record is 'fairly intensive,' and we do not simply rubber stamp the agency finding of fact." *Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 845 (Iowa 2011) (quoting *Wal–Mart Stores, Inc. v. Caselman*, 657 N.W.2d 493, 499 (Iowa 2003)). "We do not, however, engage in a scrutinizing analysis, for if we trench in the lightest degree upon the prerogatives of the commission, one encroachment will breed another, until finally simplicity will give way to complexity, and informality to technicality." *Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 525 (Iowa 2012). "Evidence is substantial if a reasonable person would find it adequate to reach the given conclusion, even if a reviewing court might draw a contrary inference." *Id.* "On appeal, our task "is not to determine whether the evidence supports a different finding; rather, our task is to determine whether substantial evidence . . . supports the findings actually made.'" *See Brooks*, ___ N.W.2d ___, 2014 WL 890152, at *4 (quoting *Pease*, 807 N.W.2d at 845).

The legislature has, by a provision of law, vested the commissioner with the discretion to make factual determinations. *Finch v. Schneider Specialized Carriers, Inc.*, 700 N.W.2d 328, 330–31 (Iowa 2005). Medical causation is a question of fact vested in the commissioner's discretion. *Pease*, 807 N.W.2d at

844. "The determination of whether to accept or reject an expert opinion is within the peculiar province of the commissioner." *Id.* at 845 (internal quotations omitted). Our supreme court reiterated these principles in the recent decision *Brooks*, ___ N.W.2d ___, 2014 WL 890152, at *3–4, which vacated the decision upon which Cargill relies.

Here, the deputy commissioner was able to observe DeLeon's demeanor as he testified regarding his injury and his ongoing pain and symptoms. The deputy was also able to observe the "ongoing lump in [DeLeon's] abdomen and the redness from the injury," which the deputy found "confirms [DeLeon's] description of his injury." After reviewing all of the medical opinions present, the deputy found that Dr. Hines conclusions were consistent with the symptoms described by the claimant, while the other medical opinions failed to explain the ongoing tenderness and pain described by DeLeon. Also, Dr. Hines' opinion was based both on prior medical records and a physical examination of DeLeon. It is not the role of the court to reassess the evidence or make its own determination of the weight to be given the various pieces of evidence. *Burns v. Bd. of Nursing*, 495 N.W.2d 698, 699 (Iowa 1993). Upon review, we find there is substantial evidence in the record when viewing the record as a whole to support the commissioner's finding DeLeon was permanently injured as a result of the work place accident.

Cargill maintains Dr. Hines was not provided with all prior medical treatment records and the commissioner failed to consider this relevant and important matter when relying on solely Dr. Hines' opinion of causation. *See* Iowa Code § 17A.19(10)(j). In rejecting the other medical opinions offered, the

commissioner explained its rationale, stating, "Significantly, claimant had no abdominal, neck, or shoulder complaints before the injury, but has had significant symptoms from the injury on. Dr. Cuddihy offers no explanation for this temporal connection between claimant's onset of pain and the work injury, and offers no alternative cause for claimant's abdominal pain."

The commissioner considered all of the expert medical opinions together with all other evidence introduced bearing on the causal connection between the injury and the disability. *Brooks*, ___ N.W.2d ___, 2014 WL 890152, at *4. In his report, Hines stated:

> It is my opinion that the patient was injured at the time of his injury on 2-23-09, that he had a stretch injury of mesentery and bowel catching the bowel into scar formation in the far lower portion of his left lower quadrant. In addition to this the patient had some additional neck and myofascial injury in the shoulder. . . . The patient's depression is felt to be related to the chronic difficulties with pain and the difficulty in obtaining any additional treatment evaluation at this point.

The commissioner found Dr. Hines' medical opinion to be the most credible. The district court accurately summarized the agency's conclusion in stating:

> The deputy and the Commissioner both considered and explicitly found a permanent abdominal injury. The deputy based his decision on his personal observation of the wound, the IME report of Dr. Hines, and the lack of weight and/or credibility of the defense reports. The Commissioner found the deputy's findings to be "detailed and are supported by the preponderance of the evidence."
> The abdominal injury is documented in the initial medical records of Dr. Cuddihy, the company physician. Dr. Cuddihy noted, the day after the injury, that there was no evidence that the abdominal condition pre-existed the work injury or was caused by any other injury. Both the deputy and the Commissioner found Dr. Hines opinion to be detailed, thorough, and consistent with Juan's ongoing abdominal symptoms.
> The Commissioner considered Cargill's evidence, but concluded it was not credible and inconsistent with Juan's

objectively verifiable ongoing symptoms. Dr. Mooney did not personally see or examine Juan. P.A. Franke does not have Dr. Hines' qualifications or expertise in evaluating work injuries. Dr. Piper's conclusion that the abdominal condition had resolved is inconsistent with the ongoing symptoms observed by the deputy and Dr. Hines.

The commissioner provided a thorough explanation regarding the reliance on Dr. Hines' opinion for causation. We cannot say the commissioner failed to consider relevant and important matters.

Dr. Hines' medical opinion, in conjunction with the deputy's observations of DeLeon's wound and testimony, provides substantial evidence in the record as a whole that DeLeon suffered a permanent work-related injury as a result of the workplace accident. The commissioner explained why, upon review of all medical opinions, Dr. Hines' opinion was the opinion he relied on and we cannot say the commissioner failed to consider important and relevant matters in doing so or that the determination was unreasonable, arbitrary, capricious, or an abuse of discretion.

### B. Permanent and Total Disability.

Next, Cargill maintains there is not substantial evidence in the record when viewed as a whole to support the commissioner's award of permanent total disability benefits. Cargill also maintains the award was "unreasonable, arbitrary, capricious, or an abuse of discretion." Permanent total disability "occurs when the injury wholly disables the employee from performing work that the employee's experience, training, intelligence, and physical capacity would otherwise permit the employee to perform." *IBP, Inc. v. Al-Gharib*, 604 N.W.2d 621, 633 (Iowa 2000).

Industrial disability measures an injured worker's lost earning capacity. *Myers v. F.C.A. Servs., Inc.*, 592 N.W.2d 354, 356 (Iowa 1999). "[I]ndustrial impairment is the product of many factors, not just physical impairment." *Simonson v. Snap-On Tools Corp.*, 588 N.W.2d 430, 434 (Iowa 1999). Our case law requires that consideration be given to the injured employee's "age, education, qualifications, experience and his inability, because of the injury, to engage in employment for which he is fitted." *McSpadden v. Big Ben Coal*, 288 N.W.2d 181, 192 (Iowa 1980). There are no guidelines establishing the weight each of these factors are to be given in the commissioner's consideration; rather the commissioner must "draw upon prior experience and general and specialized knowledge to make a finding in regard to the degree of industrial disability." *Lithcote Co. v. Ballenger*, 471 N.W.2d 64, 68 (Iowa Ct. App. 1991). "[T]he focus is not solely on what the worker can and cannot do; the focus is on the ability of the worker to be gainfully employed." *Quaker Oats Co. v. Ciha*, 552 N.W.2d 143, 157 (Iowa 1996).

As the commissioner noted, DeLeon never attended school. He cannot read or write Spanish, his native language, and he cannot speak, read, or write English. It is unlikely he will be able to learn when he has not after more than twenty-five years in United States. DeLeon's work history consists solely of physically demanding jobs, mostly in factories. With the physical restrictions that Dr. Hines prescribed,[1] DeLeon is permanently disqualified from returning to many

---

[1] Dr. Hines also assigned permanent work restrictions of not climbing on ladders, avoiding extremes of temperature and vibration, and alternating between sitting and standing every twenty minutes. Hines also stated, "Though there is probably no

of his pre-injury occupations, and due to his educational background, re-training for a different type of position is not a legitimate option.

These considerations constitute substantial evidence in the record when viewing the evidence as a whole to support the commissioner's award of total permanent disability benefits. Upon review, we cannot say the commissioner's award was unreasonable, arbitrary, capricious, or an abuse of discretion.

**IV. Conclusion.**

After considering each of the errors alleged by Cargill, we affirm.

**AFFIRMED.**

---

question of his adequacy of strength to do any lifting, the patient's pain and stability will limit lifting capabilities . . . .  He would probably be required to do only light labor work."